## DONNELLY v. CONSOLIDATED INV. TRUST et al.

### No. 3322.

Circuit Court of Appeals, First Circuit.

Sept. 27, 1938.

Edward C. Park, of Boston, Mass. (Lothrop Withington, of Boston, Mass., on the brief), for appellant.

William T. Snow, of Boston, Mass. (Charles S. Maddock and Gaston, Snow,

Hunt, Rice & Boyd, all of Boston, Mass., on the brief), for appellee Consolidated Inv. Trust.

Charles P. Curtis, Jr., of Boston, Mass. (John L. Hall, Philip H. Rhinelander, Rodgers Donaldson, and Choate, Hall & Stewart, all of Boston, Mass., on the brief), for appellee Dumaines.

Before WILSON and MORTON, Circuit Judges, and MAHONEY, District Judge.

MORTON, Circuit Judge.

This is an appeal in a bankruptcy case. The principal question presented concerns the right of Dumaine and Winsor to purchase and hold shares of the Amoskeag Company and the Amoskeag Manufacturing Company and to receive certain liquidating dividends on · the Manufacturing Company stock. There is also a question as to the appellant's standing to appeal. The facts are stated in very condensed form in the Referee's certificate.

The Amoskeag Company was a holding company in the form of a Massachusetts trust. It rested on an agreement or declaration of trust, and the beneficial interests were represented by transferable shares,— a common form of business organization. Such organizations are for purposes of taxation regarded as corporations which they much resemble, the trustees being analogous to directors and the shareholders to corporate stockholders. The shares of the Amoskeag Company were listed and dealt in on the Boston Stock Exchange. Both Dumaine and Winsor were trustees of it. The trust instrument is not before us nor is there any finding as to their duties under it. Presumably they were to hold and manage the property of the trust for the benefit of the certificate holders. The property consisted of all the shares of the Amoskeag Manufacturing Company, which was also a Massachusetts trust of similar character. It operated large textile and finishing mills in Manchester, New Hampshire, and had substantial assets.

In the summer of 1927 an offer was made by outside parties to purchase the assets of the Amoskeag Company, i. e., the shares of the Amoskeag Manufacturing Company at a price which would realize for the common shares of the holding company $90 each. This was substantially more than they were then selling for in the market. The avowed purpose of the buy-

ers was complete liquidation of the properties. Dumaine, who was a trustee of the Manufacturing Company and treasurer of it, opposed the sale. Winsor, who was also one of the trustees and was a partner in the banking house of Kidder, Peabody & Co., caused letters to be sent by his firm to all shareholders in the Amoskeag Company, saying that Kidder, Peabody & Co. regarded the shares as worth more than the then market-value and advised shareholders not to sell. About this time,—the date is not stated,—what may be regarded as a counter-plan was formulated by Dumaine and Winsor and other trustees acting with them. It contemplated partial, not · complete, liquidation of the property. If adopted it would make the shares worth substantially more than the existing market price of them. After this counter-plan was formulated but before any public announcement of it, Dumaine and Winsor began purchasing in the open market enough shares of the Amoskeag Company to secure voting control and the adoption of their own plan. Their purpose, as found by the Referee, in formulating their counter-plan and in endeavoring to put it through, was "First, to give timid stockholders a chance to get their money out of the textile business. Second, to avoid the possibility of control by an outside group whose sole purpose was to liquidate." (Referee's Certificate.) The Kidder, Peabody letter to shareholders was sent before any of the Dumaine and Winsor purchases were made. Some of their purchases were made before and some after the counterplan had been formulated and made public. Dumaine and Winsor bought "all the stock they wanted at figures well below the $90 offered by the outsiders and well below the figures which they knew the stock would command in their own plan of liquidation. They obtained all the stock they needed to secure the adoption of the trustees' plan and assured themselves a substantial profit at the same time." (Referee's Certificate.) Soon after the purchases in question were completed the trustees' plan for partial liquidation was adopted and each shareholder was offered $42 in cash, a bond of the Manufacturing Company "worth $40.-00", and a share of the latter stock for each share in the holding company. Dumaine and Winsor accepted this offer as did many other shareholders. They realized enough in cash and on the sale of the bonds to cover all expenses of the purchase of the stock. "They gained at least the

value of the stock in the operating trust." (Referee's Certificate.) The stock in the operating trust so acquired by Dumaine and Winsor was in turn passed on by them to Consolidated Investment Trust, the appellee in this case, and to "Dumaines," a similar trust. These trusts are subject to any disability which affected Winsor and Dumaine personally.

The Manufacturing Company petitioned for reorganization under section 77B, Bankr.Act, 11 U.S.C.A. § 207. After all direct claims had been paid a surplus remained distributable to its shareholders, and the Referee made the order which is appealed from. It is called "a first dividend in liquidation" "at the rate of $2.00 per share." The trustees in liquidation are directed to pay a stated sum to the debtor to be distributed by it through its agent, the Old Colony Trust Co. Detailed provisions are made with respect to the presentation and endorsement of certificates and other formal matters. Under this order the shares purchased by Dumaine and Winsor as above stated are entitled to participate.

It is the contention of the appellant, Donnelly, that by reason of Dumaine's and Winsor's positions as trustees they could not rightfully purchase stock of the Amoskeag Company, nor receive any distributions or dividends upon it. Donnelly's only interest in the matter is as one of the shareholders in the original trust who, by exchange of shares under the trustees' plan, received stock in the debtor. He contends that the Dumaine and Winsor shares should be regarded as cancelled, and that the amounts payable upon them in the liquidation, at least to the extent to which they represented profits, should be apportioned among the other shareholders. Both the Referee and the District Judge rejected the contention. The District Judge permitted an appeal in the name of the trustees; otherwise it is quite clear that Donnelly would have no standing either on a direct appeal under section 25, 11 U.S.

C.A. § 48, or on an appeal by allowance under section 24(a), 11 U.S.C.A. § 47(a). There is doubt as to the effect of the District Judge's order allowing him to appeal in the name of the trustees. We pass by these questions because we think it easier and more satisfactory to dispose of the case on the merits.

■ A trustee may not legally take or hold any interest or position in conflict with the trusts which he has undertaken, nor may he make a personal profit out of transactions made on account of the trust. Familiar examples of this are buying from or selling to the trust by a trustee in such a way that he makes a profit directly or indirectly. Jackson v. Smith, 254 U.S. 586, 41 S.Ct. 200, 65 L.Ed. 418. This principle, on which the appellant relies, has no application in the present case. The trust was not a party to the contracts by which Dumaine and Winsor acquired their stock; nor was it affected by these transactions except that one shareholder was substituted for another. The only persons affected by such contracts were the parties to them. Dumaine's and Winsor's purchases of Amoskeag shares did not in the least affect Donnelly's interest as a shareholder; the number of shares was not altered nor the amount payable on each share, and it did not matter to him who the other owners of shares were. The purchases were not as he contends utterly illegal and void; no authority is cited in support of this position, and we are aware of none. The disability of a trustee is against profiting personally at the expense of his trust; and this disability will be rigidly enforced. Nothing of that sort occurred here as to Donnelly. Whether there was improper profiting on the part of Dumaine and Winsor at the expense of the shareholders who sold to them is a distinctly different question, not presented by this appeal, on which the complete facts are not before us, and on which we express no opinion.

The order appealed from is affirmed with costs in both courts.