## In re GREENEBAUM BROS. & CO., Inc.

### No. 21767.

District Court, E. D. Pennsylvania.

Oct. 17, 1945.

Wexler & Weisman, of Philadelphia, Pa., for trustee and unsecured creditors.

Mayer, Magaziner & Brunswick, of Philadelphia, Pa., for Greenbaum's Estate et al.

KALODNER, District Judge.

Two petitions arising out of the Referee's final order of distribution of the bankrupt estate of Greenebaum Bros. & Co., Inc., have been presented for disposition. The one, a petition for review, was filed by the Executrices of the estate of Simon Greenebaum and asserts three alleged errors in the final order. The other is a petition of the bankrupt corporation filed by one of its attorneys, for leave to intervene.

The Trustee not only disputes the alleged substantive errors of the Referee, but denies the standing of the Executrices to question the Referee's order, and denies the right of the bankrupt to intervene at this time.

■ The executrices of the estate of Simon Greenebaum unquestionably stand in no better position than their decedent with regard to the right to petition this Court for review of the Referee's order. The right is asserted on the ground that Simon Greenebaum was the owner of all the outstanding stock in, and that he was the creditor of, the bankrupt corporation.

During his lifetime, Simon Greenebaum filed two proofs of claim against the bankrupt, one, for $65,000, was filed as a preferred stockholder's claim for the purpose of Chapter X, 11 U.S.C.A. § 501 et seq., proceedings; another, for $16,533.36, was based on the claim of a debt due in the amount of $15,000 because the bankrupt failed to call in 50 shares of preferred stock in each of the three years preceding

the bankruptcy (1938, 1939 and 1940), plus $1,533.36, representing undeclared dividends.

■ Granting that Simon Greenebaum was a stockholder, and his estate now in his stead, no right to petition for review obtains thereby. The corporation having been adjudicated a bankrupt, the stockholders have no standing in the bankruptcy proceedings. Donnelly v. Consolidated Investment Trust, 1 Cir., 1938, 99 F.2d 185, 38 A.B.R.,N.S., 105; In re F. P. Newport Corp., Ltd., 9 Cir., 1938, 98 F.2d 453, 37 A.B.R.,N.S., 470, 475; see 8 Remington, Bankruptcy (5th ed.) 3758. This is true even though there may be a surplus available to the bankrupt. In re Witherbee, 1 Cir., 1913, 202 F. 896, 30 A.B.R. 314, 317; Donnelly v. Consolidated Investment Trust, supra.

Concerning the claims on which the creditorship is based, it should be noted that the Trustee filed objections thereto. Insofar as I can determine, the claims were never proved nor allowed. In his certificate the present Referee stated:

"* * * neither of which said claims were allowed by the said then Referee or by me as claims of a party in interest properly filed in this proceeding, entitled to a share in distribution out of the proceeds and funds realized by the Trustee in the liquidation of the bankrupt's assets. * * *"

■ A certificate of stock ownership, despite the fact that it contains a redemption clause, does not make the stockholder a creditor of the corporation. Warren v. Queen & Co., 1913, 240 Pa. 154, 158, 87 A. 595; Warren v. King, 1883, 108 U.S. 389, 399, 2 S.Ct. 789, 27 L.Ed. 769. And, as it will be seen, the obligation to redeem cannot be enforced after the corporation becomes insolvent. 14 C.J., Corporations, p. 424, § 585, 18 C.J.S., Corporations, § 278.

■ Moreover, the claims filed must disclose a debt due. In re A. & G. Knitting Mills, Inc., 3 Cir., 1944, 144 F.2d 125. On examination, the claims fail to meet this requirement. The stock certificate here involved provides that called stock be paid out of surplus or net profits, and the Pennsylvania Corporation Law forbids a corporation to redeem stock where such redemption would reduce the remaining assets below an amount sufficient to pay all debts and known liabilities: 15 P.S.Pa. § 2852—

705. Also, the stockholder is not entitled to the corporate earnings until a dividend is declared. Green v. Philadelphia Inquirer Co., 1938, 329 Pa. 169, 175, 196 A. 32. Thus, if the claim were provable at all, it would have to disclose, at the very least, facts warranting the redemptions and dividends, aside from showing abuse of discretion by the directors. Wetherill v. Arasapha Manufacturing Co., 1915, 24 Pa.Dist. 1045, 1048; Green v. Philadelphia Inquirer Co., supra. Furthermore, it appears from the face of the stock certificate that it was issued in 1941, subsequent to the bankrupt's asserted failure to redeem (in 1938, 1939 and 1940).

Accordingly, I am of the opinion that the claims filed by Simon Greenebaum were neither proved nor allowed and the Executrices of his estate have no standing to petition this Court for review of the Referee's order.

However, because of the nature of the complaints against the Referee's order, I am inclined to dispose of them on their merits. Although three objections were stated in the petition, one, that the Referee erred in turning over the balance of the bankrupt estate to the bankrupt's attorneys, has been withdrawn.

The petitioners, secondly, object to the action of the Referee in allowing an additional counsel fee to the attorneys for the Trustee. The objection is that the fee allowed is excessive, but it is not contended that the attorneys for the Trustee are not entitled to a "reasonable" fee. It should be noted that the Trustee's attorneys first suggested the sum of $2500. Strikingly indicative of the fairness of the request is a statement made at the final meeting of the creditors by T. G. Rich, Esq., one of the counsel for the bankrupt:

"I understand that the petition for additional counsel fee for the Trustee was considered before I arrived at the meeting, therefore I should like to have an opportunity to state at this time, as the other counsel for the bankrupt and as counsel for Albert Greenebaum, Jr., vice-president of the corporation, that I have no objection to the allowance and in fact, wish to go on record as stating that we believe counsel for the Trustee has done an excellent piece of work in this case."

In point of fact, the Referee awarded a lesser sum ($1750), than that suggested by the Trustee's counsel, and his opinion sup-

porting that award is highly persuasive. In his Certificate for Review the learned Referee pointed out the peculiarly successful bankruptcy administration and the outstanding services rendered by the Trustee's counsel:

"I consider it appropriate at this point to state that during my experience covering almost nineteen continuous years as a Referee in Bankruptcy, I have not known personally nor have I had brought to my attention a bankrupt estate in which a Trustee and his counsel have rendered such faithful, diligent, painstaking and businesslike services as in this instant case. Here we have a bankruptcy proceeding in which the Debtor filed a plan of proposed reorganization whereunder unsecured creditors were to receive 25% of the face amount of their respective claims, · which offer met with rejection at the hands of the unsecured creditors and their counsel and when the order of liquidation was entered Maurice A. Kendall, the Trustee herein, under the careful and sound guidance of his counsel, so managed and conducted the assets and affairs of the bankrupt corporation that not only were secured and unsecured creditors who filed proofs of claim and whose claims were allowed herein, paid in full as to the face of their respective claims but also have received or are entitled to receive interest upon their respective claims at the legal rate in full, and still, after the payment of all thereof, there remains in the possession of the Trustee a fund of upwards of $4,000, as a surplus and residue over and above the amount necessary to satisfy the proven claims of secured and unsecured creditors in full together with interest thereon. Most certainly here is a bankruptcy case wherein a diligent, astute and businesslike Trustee exercised extraordinary sound judgment in the performance of his responsible duties, guided, as he was, by painstaking and learned counsel, who obtained the bank's close cooperation herein, which has certainly brought credit to them both. Surely this is a case for the books."

■ The Executrices of the estate of Simon Greenebaum are, in effect, asking me to ignore the opinion of one of the counsel for the bankrupt, to set aside the approbation of the creditors and to substitute my discretion for that of a competent and experienced Referee who has been in charge of the case for more than three years. After consideration of the matter I am of the opinion that the circumstances are such as to warrant full approval of the Referee's exercise of his discretion.

■ Thirdly, petitioners assert that the Referee erred in ordering dividend payments to the New York Credit Men's Adjustment Bureau, Inc., as assignee of certain creditors. It is their position that the assignors had waived their right to the interest, which was the subject of the assignment.

The simple facts, as I perceive them, are that many of the creditors agreed to subordinate their right to interest to the claim of the Philadelphia National Bank up to the point where that institution received 100% on account of its claim with lawful interest; they then assigned their right to interest to the aforementioned Bureau. The assignments were filed and recognized by the Referee.

By no reasonable construction may it be said that, in executing these documents, the creditors who were parties thereto intended to waive their right to interest for all purposes. The peg on which petitioners hang their contention is a statement made by counsel for the Trustee at a meeting held on October 24, 1944: "Without in any way discouraging the objector, it just is worthy of mention that the committee and counsel has been giving considerable thought to the possibility of unsecured creditors other than the Philadelphia National Bank waiving their claims for interest altogether so that some fund can be created for the heirs of Simon Greenebaum upon his death. * * *"

It is urged that the two documents referred to be construed "in accordance with the intention of the creditors as expressed" in the quoted statement. This I cannot do without doing violence to the quoted statement and without ignoring the actual wording and purposes of the two documents. The quoted statement is merely the expression of a thought of a possibility. The two documents, on their face, belie any construction which would convert them into expressions of waiver; they are not ambiguous, nor are they capable of such distorted meaning as the petitioners seek to *impose*. The very words of the agreements preclude any idea, short of fantasy, that the intention of the creditors was to waive their right to interest, least of all in favor of the bankrupt or the petitioners.

The petitioners press the contention that the assignment to the Bureau ought to be held invalid and of no effect because, first, there is nothing to show consideration for the assignment, and, second, the Bureau acted as secretary to the creditors' committee. Assuming this to be so, just how it affects the petitioners I am at a loss to understand. The theory seems to be that the creditors intended to forego their right to interest, and therefore, since their assignee could not take, the right escapes both the creditors and the Bureau, and vests in the bankrupt. Clearly this cannot be, for an assignment merely transfers a right; it is not a waiver in the general sense of the term; if the assignment fails for any reason, the parties can only be in the position they were before the assignment was attempted.

Equally unconvincing is the argument that the assignments to the Bureau should be held invalid. The view suggested is that the Bureau, as secretary to the creditors' committee, occupied a fiduciary position, and, like the Referee, Trustee, or Receiver, the committee "should not be permitted to acquire the trust estate or any rights therein, directly or indirectly, through its secretary or any other agent." This chain of thought is made of faulty links merely "pasted" together. The creditors' committee by its very nature is interested in the bankrupt estate, and the Chandler Act, 11 U.S.C.A. § 1 et seq., does not cloak the committee in the fiduciary's familiar legal garments.

The actual facts leave no room for doubt as to the disposition of petitioner's objections. The creditors subordinated their claim to interest, by an unmistakable document, to the Bank. Such cooperation resulted in the preservation by the Bank of certain life insurance policies, and upon the demise of the insured parties, the Bank's claims were paid in full leaving a substantial balance, which the Bank turned over to the bankrupt estate, making available a distribution to remaining claimants plus a balance. Discovering there were sufficient funds for payment of interest, certain of the unsecured creditors assigned their right to interest to the Bureau.

I see nothing in these arrangements to arouse suspicion, nor is there anything so ambiguous as to permit an interpretation contrary to that of the Referee's. Accordingly, the Order of the Referee should be affirmed.

Finally, as to the petition of the bankrupt for leave to intervene, it need only be said that the petition comes at a late date. Section 39, sub. c, of the Bankruptcy Act, 11 U.S.C.A. § 67, sub. c, limits the time for securing a review of the Referee's order to ten days after the order is filed. To permit intervention at this time would amount to circumvention of the provisions of the Act. Accordingly, the petition for leave to intervene must be denied.

For the reasons stated the exceptions to the Referee's final order of distribution are dismissed, the petitions for review and intervention are denied and the Referee's Order is affirmed and confirmed.