Louis ZWICK and Joseph Zwick, individually and as co-partners of Louis Zwick and Son, and Louis Zwick & Son, Appellants,

v.

Orville L. FREEMAN, as Secretary of Agriculture of the United States of America and the United States of America, Appellees.

No. 64, Docket 30344.

United States Court of Appeals Second Circuit.

Argued Dec. 12, 1966.

Decided Feb. 14, 1967.

Arthur Slavin, Slavin & Carr, New York City, for appellants.

Robert E. Duncan, Atty., Dept. of Agriculture, John W. Douglas, Asst. Atty. Gen., Morton Hollander, Dept. of Justice, Neil Brooks, Asst. Gen. Counsel, Daphne M. Anderson, Atty., Dept. of Agriculture, for appellees.

Before WATERMAN, MOORE and KAUFMAN, Circuit Judges.

WATERMAN, Circuit Judge:

Petitioners seek to review an order of the Judicial Officer of the United States Department of Agriculture, acting for the Secretary of Agriculture, based upon his findings and conclusions that petitioners' partnership, Louis Zwick & Son, had engaged in repeated and flagrant violations of the Perishable Agricultural Commodities Act (hereinafter sometimes "Commodities Act") § 2, 7 U.S.C. § 499b(4).[1] The individual petitioners seek review because the effect of this order under 7 U.S.C. § 499h(b) results in barring them from employment by any licensee under the Commodities Act for a minimum period of one year because they were "responsibly connect-

---

1. This court has jurisdiction to determine the validity of the order under 5 U.S.C. § 1031 et seq.

Here the Department served its complaint upon petitioners, petitioners answered and, pending a hearing before the Judicial Officer, the parties entered into a stipulation as to the facts, waived hearing and oral argument and consented that the matter be referred directly to the Judicial Officer for determination. Thereafter the Judicial Officer entered a tentative order and final order. The final order is the subject of the appeal.

ed" with the partnership licensee against which the order was issued.[2]

The facts underlying the proceedings were not disputed and the parties entered into a stipulation which was the basis of the Judicial Officer's determination. The stipulation indicates that petitioners Louis Zwick and Joseph Zwick were engaged in business as partners under the name Louis Zwick & Son. The partnership conducted business in New York City and had been licensed under the Perishable Agricultural Commodities Act as a commission merchant and dealer since August 1947, said license having been renewed annually. Between May 1963 and August 1964 Louis Zwick & Son received 132 lots of fruits and vegetables from seven shippers, sold them, and failed to pay for them. Between June and August 1964 the partnership received 20 lots of fruits and vegetables from five shippers on a joint account basis, sold them and failed to pay for them. Between January 1961 and September 1964 the partnership purchased and received 140 lots of perishable agricultural commodities from 22 shippers but failed to pay for them although some installment payments were paid upon purchases made prior to 1964. During 1963 and 1964 the partnership engaged various brokers to negotiate purchases on its behalf. Three brokers negotiated such purchases, earned their fees, and were not paid by the partnership. In summary, Louis Zwick & Son failed to pay sums due upon 295 transactions covered by the Commodities Act and owed a total of $254,394.55.

On September 25, 1964 the partnership filed a petition in bankruptcy under

---

2. Employment may be approved by the Secretary after one year if they furnish a surety bond satisfactory to the Secretary, or approved after two years without bond. 7 U.S.C. § 499h(b).

7 U.S.C. § 499h(b) reads as follows:

§ 499h. Grounds for suspension or revocation of license.

\* \* \* \* \*

(b) Unlawful employment of certain persons; restrictions; bond assuring compliance; approval of employment without bond; change in amount of bond; payment of increased amount; penalties.

Except with the approval of the Secretary, no licensee shall employ any person, or any person who is or has been responsibly connected with any person—

(1) whose license has been revoked or is currently suspended by order of the Secretary;

(2) who has been found after notice and opportunity for hearing to have committed any flagrant or repeated violation of section 499b of this title, but this provision shall not apply to any case in which the license of the person found to have committed such violation was suspended and the suspension period has expired or is not in effect; or

(3) against whom there is an unpaid reparation award issued within two years, subject to his right of appeal under section 499g(c) of this title.

The Secretary may approve such employment at any time following nonpayment of a reparation award, or after one year following the revocation or finding of flagrant or repeated violation of section 499b of this title, if the licensee furnishes and maintains a surety bond in form and amount satisfactory to the Secretary as assurance that such licensee's business will be conducted in accordance with this chapter and that the licensee will pay all reparation awards, subject to its right of appeal under section 499g(c) of this title, which may be issued against it in connection with transactions occurring within four years following the approval. The Secretary may approve employment without a surety bond after the expiration of two years from the effective date of the applicable disciplinary order. The Secretary, based on changes in the nature and volume of business conducted by the licensee, may require an increase or authorize a reduction in the amount of the bond. A licensee who is notified by the Secretary to provide a bond in an increased amount shall do so within a reasonable time to be specified by the Secretary, and if the licensee fails to do so the approval of employment shall automatically terminate. The Secretary may, after thirty days notice and an opportunity for a hearing, suspend or revoke the license of any licensee who, after the date given in such notice, continues to employ any person in violation of this section.

Chapter XI and submitted a plan of arrangement by which it offered to pay creditors 30% on their claims. The schedules filed in these proceedings listed all the creditors in the 295 transactions described above. The plan of arrangement was approved and confirmed by the Referee by an order dated February 25, 1965. The bankruptcy proceedings included a report that an adverse survey of the partnership books by certified public accountants showed no evidence of irregularity or wrongdoing on the part of the partnership. The license of the partnership under the Commodities Act terminated automatically upon the approval of the plan.

Petitioners object to the Judicial Officer's findings and order on a number of grounds which we will consider in turn. We find no merit to any of their contentions and we therefore deny their petition to review the Judicial Officer's order.

■■ Petitioners first contend that their failure to make full payment to their creditors in the 295 transactions described above does not constitute repeated or flagrant violations within the meaning of the statute. Their argument seems to be that inasmuch as the violations were mainly in one short period during the spring and summer of 1964, when petitioners were in the process of becoming insolvent, all the violations should be considered together as one bundle of violations in point of time and not as "repeated" violations in a continuing series of violations. This is a strained interpretation of a common word which we must interpret in its conventional sense. United States v. Gilbert Associates, Inc., 345 U.S. 361, 364, 73 S.Ct. 701, 97 L.Ed. 1071 (1953); Folker v. Johnson, 230 F.2d 906, 907 (2 Cir. 1956). The 295 violations did not occur simultaneously and therefore they must be regarded as "repeated" violations within the meaning of the Commodities Act.

■ Petitioners likewise attack the Judicial Officer's conclusion that their violations were "flagrant" although the report filed in the bankruptcy proceeding showed that there was no evidence of wrongdoing on their part. As the statute only requires a finding that the violations are repeated or flagrant [3] and we have already found them to be "repeated" it is not necessary also to find them to be "flagrant" in order to support the Judicial Officer's conclusion. But we think that these 295 violations were in fact "flagrant" violations within the meaning of the statute. Petitioners' reference to the report filed in the bankruptcy proceeding which showed that there was no evidence of wrongdoing on their part is an irrelevant reference for it is clear that the failures of the petitioners to pay the accounts that caused the institution of the bankruptcy proceedings made petitioners guilty of flagrant violations of the Perishable Agricultural Commodities Act before the bankruptcy proceedings were ever instituted. As there was a series of 295 transactions which occurred over a period of several months and which involved a deficit in excess of a quarter of a million dollars, it is inconceivable that petitioners were unaware of their financial condition and unaware that every additional transaction they entered into was likely to result in another violation of the Commodities Act. It would be hard to imagine clearer examples of "flagrant" violations of the statute than were exemplified by petitioners' conduct.

The next contention of the petitioners is that the institution of the within proceedings before the Judicial Officer pursuant to the Perishable Agricultural Commodities Act after the order of confirmation of petitioners' plan of arrangement under the Bankruptcy Act contravened Section 17 of the Bankruptcy Act and the goals the Bankruptcy Act was intended to foster.

■■ Section 17 of the Bankruptcy Act, 11 U.S.C. § 35 provides: "A discharge in bankruptcy shall release a bankrupt from all of his provable debts." To be sure, a discharge is intended to accomplish just exactly that, offering

---

3. 7 U.S.C. §§ 499d(b) (B), 499h(b) (2).

the bankrupt a fresh start in life. However, the discharge provided by Section 17 does not extinguish debts; it only bars, if pleaded, legal proceedings to enforce payment of the discharged debts. Helms v. Holms, 129 F.2d 263, 266, 141 A.L.R. 1367 (4 Cir. 1942); 1 Collier, Bankruptcy, ¶ 17.27 at 1693 (14th ed. 1966). Only "provable debts" are discharged by the operation of Section 17; all other obligations of the bankrupt remain in full force. Crawford v. Burke, 195 U.S. 176, 186, 25 S.Ct. 9, 49 L.Ed. 147 (1904); 1 Collier, Bankruptcy, ¶ 17.03 at 1580 (14th ed. 1966).

 "Provable debt" is defined in § 63 of the Bankruptcy Act and "debt" is defined somewhat circuitously in § 1 (14) of the Bankruptcy Act which states " 'Debt' shall include any debt, demand, or claim provable in bankruptcy." While "debt" in the bankruptcy law is not restricted to its strict legal meaning, In re Fife, 109 F. 880 (W.D.Pa.1901) it does require that something be "owed" to the creditor. In re A & G Knitting Mills, 144 F.2d 125 (3 Cir. 1944); In re Greenebaum Bros. & Co., 62 F.Supp. 769 (E.D. Pa.1945); 3 Collier, Bankruptcy, ¶ 63.02 at 1762 (14th ed. 1966); cf. Ivanhoe Building & Loan Assn. v. Orr, 295 U.S. 243, 55 S.Ct. 685, 79 L.Ed. 1419 (1935). The distinction here is an obvious one; here the petitioners "owe" nothing to the Government. The statutory provision with which we are concerned can best be described as a sanction imposable upon the petitioners by the Government because of their conduct by which their debts to others came into being. Inasmuch as governmental sanctions are not regarded as debts even when they require monetary payments, Parker v. United, States, 153 F.2d 66, 71, 163 A.L.R. 379 (1 Cir. 1946); In re Moore, 111 F. 145 (W.D.Ky.1901), it is obvious that petitioners here do not owe a debt to the Government. Nothing could be more ridiculous than to hold that an imposable sanction upon a bankrupt's actions unrelated to a debt owed to the Government would be a "provable debt" the bankrupt could render unenforceable by obtaining a discharge in bankruptcy. Thus there is no direct conflict between the Commodities Act and the provisions of the Bankruptcy Act in this particular.

Petitioners further claim that even if these provisions of the Commodities Act do not conflict with any express provisions of the Bankruptcy Act they conflict with its goals. They also claim that the institution of this proceeding below and the order entered therein were arbitrary and capricious and were improper exercises of the Secretary's discretion in view of the petitioners' discharges in bankruptcy and the report filed in the bankruptcy proceeding that there was no evidence of wrongdoing by the petitioners. We consider all these contentions together. We find nothing improper in the Department's action in instituting the proceeding, or in the Judicial Officer's order imposing the statutorily authorized sanctions, for we do not discover any unconscionable clash between the goals of the Commodities Act and the goals of the Bankruptcy Act.

 The Bankruptcy Act is intended to relieve an honest debtor of liability for his past obligations and to allow him to start afresh. Williams v. United States Fid. & Guar. Co., 236 U.S. 549, 554-555, 35 S.Ct. 289, 59 L.Ed. 713 (1915). The Perishable Agricultural Commodities Act is designed to protect the producers of perishable agricultural products who in many instances must send their products to a buyer or commission merchant who is thousands of miles away. It was enacted to provide a measure of control over a branch of industry which is almost exclusively in interstate commerce, is highly competitive, and presents many opportunites for sharp practice and irresponsible business conduct. H.Rept.No.1196, 84th Cong.1st Sess. 2 (1955).

 The measures which petitioners object to in the Commodities Act would seem, to some extent, to conflict with the policy of the Bankruptcy Act. They prevent petitioners from shortly making a fresh debt-free start in the industry in which they had been earning their liveli-

hood, although they are entirely free, as far as the challenged statute is concerned, to enter any other occupation or business which appeals to them. Nevertheless, in the light of the purposes of the Commodities Act and the clearly recognized need to have financially responsible persons as licensees or employees of licensees under that Act, the extent of encroachment of the Commodities Act upon the goals of the Bankruptcy Act cannot be regarded as unconscionable or excessive. We find no cases involving alleged conflicts between the Bankruptcy Act and other federal legislation, but there are a number of reported cases that hold that reasonable measures provided for in state statutes which impose penalties on bankrupts are not invalid under the Supremacy Clause, United States Constitution, Art. VI, cl. 2, despite some degree of conflict with the Bankruptcy Act. Even when a judgment debt has become unenforceable by the discharge in bankruptcy of the judgment debtor the United States Supreme Court has upheld state statutes which deprived discharged bankrupts of automobile driving privileges unless the bankrupts satisfied judgments that arose from highways accidents they caused. Kesler v. Dep't of Pub. Safety, 369 U.S. 153, 82 S.Ct. 807, 7 L.Ed.2d 641 (1962); Reitz v. Mealey, 314 U.S. 33, 62 S.Ct. 24, 86 L.Ed. 21 (1941). Similarly, the California courts have upheld a California statute which makes the bankruptcy of a building contractor a ground for disciplinary action against him to the extent of suspending or revoking his contractor's license. Tracy v. Contractors' State License Board, 63 Cal.2d 598, 47 Cal. Rptr. 561, 407 P.2d 865 (Sup.Ct.1965) (en banc); Hopkins v. Contractors' State License Board, 240 Cal.App.2d 710, 49

Cal.Rptr. 917 (Dist.Ct.App.1966); Hope v. Contractors' State License Board, 228 Cal.App.2d 414, 39 Cal.Rptr. 514 (Dist. Ct.App.1964). It would seem that the principle of these cases involving the application of the Supremacy Clause to a supposed conflict between state and federal statutes would apply a fortiori to a supposed conflict between two federal statutes of equal dignity. We cannot lightly infer that Congress intended to exempt bankrupts from being subject to these provisions of the Commodities Act when such an exemption would be extremely damaging to the goal of the Commodities Act that only financially responsible persons should be engaged in the businesses subject to the Act. Our judgment is supported by the fact that other provisions of the Perishable Agricultural Commodities Act contain specific references to bankruptcy, see 7 U.S.C. §§ 499d(a), 499d(b) (D), 499d(e). It is unlikely that Congress would include references to bankruptcy in some portions of the Commodities Act and omit them from the portions relevant to this case if Congress had intended that the provisions challenged here would be affected by the bankruptcy of persons subject to them. See T. I. M. E., Inc. v. United States, 359 U.S. 464, 79 S.Ct. 904, 3 L.Ed. 2d 952 (1959); Lang v. Commissioner of Internal Revenue, 289 U.S. 109, 53 S.Ct. 534, 77 L.Ed. 1066 (1933).

■ Finally, petitioners challenge the constitutionality of Section 499h of the Perishable Agricultural Commodities Act on several grounds. They claim it violates Article I, Section Nine of the United States Constitution, and the Fifth and Eighth Amendments. We do not understand them to challenge § 499h(a) [4]

---

4. 7 U.S.C. § 499h(a) reads as follows:
§ 499h. Grounds for suspension or revocation of license.
(a) Authority of Secretary.
 Whenever (a) the Secretary determines, as provided in section 499f of this title, that any commission merchant, dealer, or broker has violated any of the provisions of section 499b of this title, or (b) any commission merchant, dealer, or broker has been

found guilty in a Federal court of having violated section 499n(b) of this title, the Secretary may publish the facts and circumstances of such violation and/or, by order, suspend the license of such offender for a period not to exceed ninety days, except that, if the violation is flagrant or repeated, the Secretary may, by order, revoke the license of the offender.

**118**

which provides only for suspension and revocation of licenses and is clearly within the power of the federal Government in the exercise of its power over interstate commerce. Nelson v. Secretary of Agriculture, 133 F.2d 453 (7 Cir. 1943); see Eastern Produce Co. v. Benson, 278 F.2d 606 (3 Cir. 1960). The challenge is directed toward the harsher restriction of § 499h(b) which prohibits any licensee under the Act from employing any person who had been responsibly connected with any person who was found to have committed flagrant or repeated violations of Section 499b. As we have explained earlier this provision bars petitioners from employment in any capacity in the perishable commodities industry for a period of at least one year.

 Petitioners claim this provision violates their Fifth Amendment right to earn a livelihood in the common occupations of the community, Truax v. Raich, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131 (1915), but the Constitution does not guarantee an unrestricted privilege to engage in business or a privilege to conduct a business as one pleases. Nebbia v. People of State of New York, 291 U.S. 502, 527–528, 54 S.Ct. 505, 78 L.Ed. 940 (1934). Undoubtedly the perishable commodities industry is an industry subject to reasonable congressional regulation. See Eastern Produce Co. v. Benson, 278 F.2d 606 (3 Cir. 1960). Conceding Congress's undoubted right to regulate the industry petitioners question whether the right to regulate gives Congress the right to provide that the Secretary of Agriculture may exclude persons in petitioners' position from all employment in the industry.

 Legislative history indicates that Section 499h(b) was enacted in order to prevent circumvention of the purposes behind the Act by persons currently under suspension or by persons whose licenses had been revoked and who, by the subterfuge of acting as an "employee" of a nominal licensee nevertheless continued in the business. It was felt that the only way to prevent this flouting of the purposes of the Act was to forbid persons under suspension, persons whose licenses were revoked, and persons who had been or were currently responsibly connected with them from all employment in the industry.[5] While admittedly the result Congress desired could be harsh in some cases, we cannot say that Section 499h(b) is not reasonably designed to achieve the desired Congressional purpose. See Nebbia v. People of State of New York, 291 U.S. 502, 525, 54 S.Ct. 505 (1934).

An analogous situation to this was presented to the New York Court of Appeals in Bradley v. Waterfront Comm'n of N. Y. Harbor, 12 N.Y.2d 276, 239 N.Y.S.2d 97, 189 N.E.2d 601 (1963). Section 8 of the New York Waterfront Commission

---

5. H.R.Rep. No. 1546, 87th Cong.2d Sess. (1962), U.S.Code Cong. & Admin.News 1962, p. 2749 states:
 * * * Any licensee hiring a person without the approval of the Secretary in violation of this provision, after notice and opportunity for hearing, may have his license suspended or revoked. At present the act applies only to the employment of a person in a responsible position. This has caused serious difficulties due to the problem of delineating what constitutes a responsible position under all circumstances and the difficulty of ascertaining the true nature of the employee's relationship with the licensee. Under the present provisions of the act the restrictions against employment are directed specifically to persons whose licenses had been revoked or suspended and persons responsibly connected therewith. The bill extends such restrictions to persons whose licenses could have been revoked or suspended if they had had active licenses. As amended, section 8(b) [499h(b)] would prohibit employment of persons covered by it unless such employment is approved by the Secretary; whereas at present it prohibits such employment only after notice by the Secretary.
 See Hearings on H.R. 5023 before the Subcommittee on Domestic Marketing of the House Committee on Agriculture, 87th Cong., 1st Sess. (1961); Hearings on S. 1037 Before a Subcommittee of the Senate Committee on Agriculture and Forestry, 87th Cong., 1st Sess. (1961).

Act, McKinney's Unconsol.Laws, § 9933, which forbids unions from collecting dues from waterfront employees if any of the union's officers had been convicted of a felony was upheld by the United States Supreme Court in De Veau v. Braisted, 363 U.S. 144, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960). Discovering that the former officers continued to dominate the unions as "employees," the New York Legislature amended Section 8 so as to extend the section's application to employees of the union as well as to the union officers. The court in *Bradley* had no difficulty in holding that this amendment to the statute did not violate due process because the amendment was no more than was necessary in order to carry out the original objectives of the statute.

 Our conclusion that § 499h(b) does not violate the Fifth Amendment is bolstered by Birkenfield v. United States, 369 F.2d 491 (3 Cir. 1966). In that case Birkenfield was subjected to the sanctions of Section 499h(b) when Fort Pitt Tomato & Produce Co. (Fort Pitt) of which Birkenfield had been treasurer, director, and an owner of more than 10% of the outstanding stock, was found to have failed to pay a reparation award under Section 499g. Though he had been an officer and a director of Fort Pitt and had owned more than one tenth of its stock, Birkenfield claimed that he had been only a nominal officer or stockholder, actual authority being vested in others, and therefore he was not "responsibly connected" with Fort Pitt. He maintained he was deprived of due process because he was not granted a hearing on the issue. The court held that Birkenfield was not entitled to a hearing as he was obviously within the statutory definition of one "responsibly connected," and also held that this "per se" standard was not unconstitutional in view of the purpose of the statute to prevent persons from circumventing the Act by designating themselves as employees while they actually held more responsible positions.

 Petitioners' next constitutional objection is that Section 499h(b)

constitutes a cruel and unusual punishment in violation of the Eighth Amendment. We find no merit in this. While this constitutional protection may have been extended beyond technically criminal sanctions to those criminal in nature, Trop v. Dulles, 356 U.S. 86, 88, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958), it is not applicable to purely civil penalties. United States v. Strangland, 242 F.2d 843, 848 (7 Cir. 1957). In any event, as the sanction serves a valid public purpose, one who is denied the right to employment in one limited industry for a period of one or two years cannot be considered to have been cruelly or unusually punished. See Pierce v. Securities & Exchange Commission, 239 F.2d 160 (9 Cir. 1956).

 Petitioners' last claim is that Section 499h(b) is a bill of attainder in violation of Article I, Section Nine of the United States Constitution. They cite United States v. Brown, 381 U.S. 437, 85 S.Ct. 1707, 14 L.Ed.2d 484 (1965) in support of this. We find the *Brown* case clearly distinguishable. It involved a statute making it a crime for a member of the Communist Party to serve as an officer of a labor union. The Court held that the statute was invalid as a bill of attainder because it specifically named Communist Party members as those subject to the provisions and did not set forth a generally applicable rule applying to anyone who commits certain acts or possesses certain characteristics. United States v. Brown, supra at 450, 85 S.Ct. 1707. The statute here challenged, Section 499h(b) of the Commodities Act, is squarely within the category of disabilities permissible under *Brown*. It does not name or describe petitioners or any group to which they belong; it prohibits a course of conduct; it prohibits a violation of a statute by one licensed under the statute with whom petitioners may be responsibly connected. Petitioners' actions brought them within the operation of the statute, and sanctions imposed upon them for those actions are proper exercises of governmental regulatory power. Petitioners were not automatically

condemned by the statute; they incurred the penalties of the statute only after an administrative determination which was subject to judicial review by this court. Section 499h(b) is not invalid as a bill of attainder.

Petition denied. Order below affirmed.