**GEORGE STEINBERG AND SON, INC., Petitioner,**

**v.**

**Earl L. BUTZ, Secretary of Agriculture, and United States of America, Respondents.**

**No. 218, Docket 73–1226.**

United States Court of Appeals, Second Circuit.

Argued Dec. 17, 1973.

Decided Feb. 11, 1974.

Robert A. Katz, New York City (Joseph Einhorn, New York City, of counsel), for petitioner.

Judith S. Feigen, Dept. of Justice, Washington, D. C. (Irving Jaffe, Acting Asst. Atty. Gen., Kathryn H. Baldwin, Dept. of Justice, Washington, D. C., on the brief), for respondents.

Before LUMBARD, FRIENDLY and OAKES, Circuit Judges.

OAKES, Circuit Judge:

Petitioner, a corporation, seeks review of an order issued by the Secretary of Agriculture finding petitioner in "fla-

grant and repeated violation" of the Perishable Agricultural Commodities Act (PACA or Act) and denying its application for a license thereunder. The Secretary's "Judicial Officer" found the petitioner corporation to have committed such violations of PACA by failure to make full payment on 283 lots of commodities purchased from 19 sellers in violation of 7 U.S.C. § 499b(4). Petitioner makes four main arguments: (1) that the administrative complaint in this action was not signed by the proper official in the Department of Agriculture; (2) that because the hearing officer (as opposed to the judicial officer) found that the record did not establish willfulness with respect to the transactions involved, petitioner was therefore entitled to a so-called "second chance" under § 9(b) of the Administrative Procedure Act, 5 U.S.C. § 558(c), providing that the withdrawal or suspension of a license is lawful only if the licensee has been given written notice of the conduct warranting suspension and opportunity to demonstrate compliance with all lawful requirements; (3) that Paul Steinberg, a stockholder and employee of petitioner, cannot be deprived of his right to obtain employment without due process; and (4) that there should be a remand to the Department for a new hearing on the question of willfulness. We reject each of petitioner's arguments and deny review.

■ Before briefly recounting the underlying factual background of this case, it is well to recall that PACA was originally enacted by Congress in 1930 for the purpose of regulating the interstate business of shipping and handling perishable agricultural commodities such as fresh fruit and vegetables. *See generally* 1962 U.S.Code Cong. & Admin.News p. 2749. Zwick v. Freeman, 373 F.2d 110 (2d Cir.), cert. denied, 389 U.S. 835, 88 S.Ct. 43, 19 L.Ed.2d 96 (1967). The essential need for regulation arose in the unfair activities of commission merchants, dealers and brokers who received shipments from growers and shippers. Upon receiving a shipment of perishable commodities, the commission merchants, dealers and brokers would wrongfully reject the shipment, in many cases making the false claim that the commodities had arrived in a damaged condition or some other claim permitting rejection of the shipment. These fraudulent rejections were made when the market for the commodity was declining so that the commission merchant, dealer or broker would have suffered a loss had he accepted the shipment and paid the contract price. *See* H.R.Rep. 1041, 71st Cong.2d sess., H.R.Rep. 1546, 87th Cong. 2d sess.

Essentially the Act provides a system of licensing and penalties for violations. Under § 2, 7 U.S.C. § 499b, it is unfair for a commission merchant, dealer or broker to engage in listed unfair practices, including in subsection (4) failure to "make full payment promptly." Section 3 of the Act, 7 U.S.C. § 499c, requires them to obtain a license from the Secretary of Agriculture as a condition of doing business, and § 4 as amended, 7 U.S.C. § 499d, governs the issuance of licenses. Under § 5 of the Act as amended, 7 U.S.C. § 499e, a violator of § 2 is liable for damages to the injured party which may be obtained in an action before the Secretary or by a separate lawsuit, while §§ 6 and 7 of the Act, 7 U.S. C. §§ 499f, 499g, relate to complaints to the Secretary for investigation and hearing and provide for the issuance of reparation orders requiring a violator to pay damages. Section 8 as amended, 7 U.S.C. § 499h, provides in subsection (a) the grounds for revocation of licenses by the Secretary for violation and in subsection (b) empowers the Secretary to limit employment within the industry of "any person who is or has been responsibly connected with" such violators.[1]

---

1. The statute in pertinent part reads:
    (a) Whenever (a) the Secretary determines, as provided in section 499f of this title, that any commission merchant, dealer, or broker has violated any of the provisions of section 499b of this title,

Petitioner, George Steinberg and Son, Inc., was a New York corporation licensed under § 3 of the Act, 7 U.S.C. § 499c. Its officers, each of whom owned 50 per cent of the stock, were George Steinberg, president, and Paul Steinberg, secretary. Between April, 1968, and May, 1969, the corporation purchased, received and failed to pay for 328 lots of perishable agricultural commodities with a total value of $67,641.96. On November 19, 1968, a petition for involuntary bankruptcy was filed against the corporation. At that time George Steinberg retired from the corporation and full and complete control was vested in Paul Steinberg, for whom relief is sought in this petition. On January 8, 1969, a voluntary plan under Chapter XI of the Bankruptcy Act was entered but this was abandoned on June 2, 1969, and the corporation was adjudicated bankrupt. Its license to do business terminated on June 28, 1969, and due to its bankruptcy the corporation failed to renew it.

In July, 1969, the Secretary of Agriculture first learned of the corporation's failure to pay for purchased commodities. An investigation was begun, and notice was sent to the corporation on April 21, 1970, allowing an opportunity to demonstrate or achieve compliance with all of the requirements of the Act. The corporation did not respond to this notice, probably owing to its prior bankruptcy. By complaint filed July 1, 1970, and signed by the director of the Fruit and Vegetable Division, the Steinberg corporation was charged with flagrant and repeated violations of § 2 of PACA by reason of its failure to pay the more than $67,000 owed, as previously recounted. The corporation failed to respond, although the complaint notified it that failure to answer would constitute admission of the facts alleged and that failure to request a hearing would constitute waiver of the hearing. Again petitioner alleges that it did not receive the complaint, which does not seem unlikely in light of its defunct state. A default order against the petitioner was entered but was vacated on January 13, 1971, by the issuance of an order reopening the proceeding. On February 5, 1971, petitioner filed an answer in which it did not deny the failure to make full payment on perishable agricultural commodities received and accepted in interstate commerce. On March 24, 1971, the corporation applied for a new license under the Act. Paul Steinberg, listing himself as vice president of the corporation, applied for the license in an effort to secure the procedural advantages conferred on parties who are li-

. . . the Secretary may publish the facts and circumstances of such violation and/or, by order, suspend the license of such offender for a period not to exceed ninety days, except that, if the violation is flagrant or repeated, the Secretary may, by order, revoke the license of the offender;

(b) Except with the approval of the Secretary, no licensee shall employ any person, or any person who is or has been responsibly connected with any person—

(1) whose license has been revoked or is currently suspended by order of the Secretary;

(2) who has been found after notice and opportunity for hearing to have committed any flagrant or repeated violation of section 499b of this title, but this provision shall not apply to any case in which the license of the person found to have committed such violation was suspended and the suspension period has expired or is not in effect;

.     .       . .       .          .

The Secretary may approve such employment at any time following nonpayment of a reparation award, or after one year following the revocation or finding of flagrant or repeated violation of section 499b of this title, if the licensee furnishes and maintains a surety bond in form and amount satisfactory to the Secretary as assurance that such licensee's business will be conducted in accordance with this chapter and that the licensee will pay all reparation awards, subject to its right of appeal under section 499g(c) of this title, which may be issued against it in connection with transactions occurring within four years following the approval. The Secretary may approve employment without a surety bond after the expiration of two years from the effective date of the applicable disciplinary order.

censed on the day that the complaint is filed. It was specifically stated, however, that the applicant did not seek a license to conduct business and would not conduct business under it until the further approval of the Secretary. The director of the Fruit and Vegetable Division issued a notice to show cause why the license should not be denied, the notice setting forth the alleged failure of the corporation to make full payment promptly for the 328 lots of commodities previously referred to. By an order dated April 26, 1971, the disciplinary proceeding and the proceeding on the notice to show cause why the license should not be denied were consolidated.

During the subsequent hearing, witnesses affiliated with three unpaid creditors of the corporation testified that their companies had not received payments on more than 30 shipments, and one witness testified that a check for over $3,000 signed by Paul Steinberg to a creditor had been returned for insufficient funds in 1968. Thereafter the parties stipulated that the corporation had purchased from creditors in interstate commerce perishable agricultural merchandise and admitted violations of § 2 of the Act on 328 separate occasions. However, the corporation denied that Paul Steinberg had personal knowledge or involvement in the transactions. Thereafter the Department determined not to pursue violations occurring after January 8, 1969, the date on which the corporation consented to an adjudication in bankruptcy, so that the stipulation was effective only as to 283 violations covering the period from April 24, 1968, through January 7, 1969.

It is an interesting sidelight here that the hearing examiner recommended that respondent's license application should be denied, but also felt that the complaint in the disciplinary proceeding should be dismissed on the basis that the corporation had not been given the "second chance" under § 9(b) of the Administrative Procedure Act, 5 U.S.C. § 558(c) [2] because there had been no allegation of willfulness in the complaint, relying on In re American Fruit Purveyors, Inc., 30 A.D. 1542 (1971). The judicial officer, however, in reviewing the matter, requested the corporation to specify any proof which might concern lack of willfulness as that term is defined in *American Fruit Purveyors, supra*; whether any sellers had waived their right to be paid in full; to what extent if any the sellers had been paid; whether there had been any other mitigating circumstances; and on what date if any prior to January 8, 1969, a trustee had been appointed or a committee established with power to direct the actions of the corporation, as opposed to its being directed by Paul Steinberg. The corporation's response indicated that if the case were remanded it would offer proof to show that George Steinberg had a chronic cardiac condition which prevented him from attending to business regularly during 1968; that five of the 19 unpaid sellers knew the risk involved and would waive payment; and that if the corporation had been given the opportunity to make payment in April, 1970, it could have reduced its obligation since the final report of the trustee listed corporate assets in excess of $11,000. Petitioner's counsel also stated

2. Section 9(b) of the Administrative Procedure Act, 5 U.S.C. § 558(c), provides in pertinent part:
    . . . Except in cases of willfulness or those in which public health, interest or safety requires otherwise, the withdrawal, suspension, revocation, or annulment of a license is lawful only if, before the institution of agency proceedings therefor, the licensee has been given—
    (1) notice by the agency in writing of the facts or conduct which may warrant the action; and

    (2) opportunity to demonstrate or achieve compliance with all lawful requirements.
    When the licensee has made timely and sufficient application for a renewal or a new license in accordance with agency rules, a license with reference to an activity of a continuing nature does not expire until the application has been finally determined by the agency.

that, if willfulness had been in issue, he would not have stipulated to the alleged violations. The judicial officer denied the remand and held that the uncontroverted facts compelled the conclusion that the corporation committed "flagrant and repeated violations of § 2 of the Act" by its failure to pay $57,207.42 to 19 sellers on 283 occasions. On the issue of willfulness the judicial officer concluded that the violations were willful, although noting that willfulness was not relevant since § 9(b) of the APA was not involved because no license was being suspended or revoked. The judicial officer ordered publication of the facts and circumstances relating to the flagrant and repeated violations and ordered that the application for a license be denied. Following a motion for rehearing, reargument and reconsideration which was denied, this petition for review followed and the order of the judicial officer was stayed pending this appeal.

## I.

Petitioner argues that only the Deputy Administrator may file disciplinary complaints. Here, however, the director of the Fruit and Vegetable Division signed the administrative complaint. Under 7 C.F.R. § 47.27(b) "disciplinary proceedings may be instituted only upon moving papers filed by the Deputy Administrator acting either as a result of the informal complaint procedure hereinbefore provided or on his own motion." The term "Deputy Administrator," nevertheless, is broadly defined to include "any officer or employee of the [Consumer and Marketing] Service to whom authority has heretofore lawfully been delegated, or to whom authority may hereafter lawfully be delegated, to act in his stead." 7 C. F.R. § 47.2(e).

The Deputy Administrator for the Consumer and Marketing Service is responsible for general supervision of all of the programs and activities assigned to the Service, including those under PACA. 33 Fed.Reg. 10750–51. These programs are carried out by six com-

modity divisions, including the Fruit and Vegetable Division. *Ibid.* The Fruit and Vegetable Division is specifically responsible for administering PACA, 33 Fed.Reg. 10752, and the director of that division is delegated authority to perform all duties and to exercise all functions and powers vested in the Deputy Administrator except such authority as is reserved to the administrator, associate administrator or deputy administrators, but there is no specific reservation of authority to issue complaints under PACA. 33 Fed.Reg. 10754–55. Under this 1968 organization set forth in 33 Fed.Reg. 10750 et seq., the director of the Fruit and Vegetable Division, therefore, has the authority to administer PACA and consequently the power to initiate disciplinary proceedings under it. The administrative construction of the regulation is consistent with this conclusion and, as such lends it some weight. Thorpe v. Housing Authority, 393 U.S. 268, 276, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969). Accordingly, we reject petitioner's first argument.

## II.

The petitioner argues that the "second chance" doctrine as set forth in the APA § 9(b), 5 U.S.C. § 558(c), must be applied to this case. As we have said, the hearing examiner agreed with petitioner and, relying on In re *American Fruit Purveyors, Inc., supra,* believed that the corporation must be given an opportunity to demonstrate or achieve compliance, that is, must be given a "second chance," before the complaint is filed except in cases of willfulness. Since the complaint here contained no allegation of willfulness, the hearing examiner concluded that a "second chance" had to be afforded to the corporation. But there are at least two answers to this. First, § 9(b) by its own terms applies only to "the withdrawal, suspension, revocation, or annulment of a license." 5 U.S.C. § 558(c). The *American Fruit Purveyors* case, relied upon by the hearing examiner below (and incidentally decided by the same judicial officer who decided the instant

case), is obviously inapplicable since in it there was a currently valid license under PACA. In this case, the issue whether George Steinberg and Son, Inc., committed flagrant and repeated violations of § 2 of PACA does not involve the withdrawal, suspension, revocation, or annulment of a license, and the collateral consequences of the determination of that issue upon Paul Steinberg have no bearing on any license issue, since Paul Steinberg was not a licensee. The statutory prohibition against licensees employing for one year a person who was responsibly connected with a corporation found to have committed flagrant and repeated violations is not a sanction involving the suspension or revocation of a license of the responsibly connected person. *Compare* 7 U.S.C. § 499h(b)(1) *with* 7 U.S.C. § 499h(b)(2). It is undisputed that petitioner Paul Steinberg as an officer and 50 per cent shareholder was "responsibly connected" with George Steinberg and Son, Inc. Accordingly, he is subject to the consequences established in § 8, 7 U.S.C. § 499h, if the corporation has committed repeated or flagrant violations: It seems clear enough that the corporation has committed such violations. Zwick v. Freeman, *supra*; Fruit Salad, Inc. v. Secretary of Agriculture, 451 F.2d 162 (1st Cir. 1971).

Moreover, the "second chance" doctrine would apply only if the violations had not been willful. It is clear enough that under § 9(b), doing an act which is prohibited and doing it intentionally "irrespective of evil motive or reliance on erroneous advice" or "acts with careless disregard of statutory requirements" are willful. *See* Goodman v. Benson, 286 F.2d 896, 900 (7th Cir. 1961); *see also* United States v. Illinois Central Railroad Co., 303 U.S. 239, 243, 58 S.Ct. 49, 82 L.Ed. 518 (1938). Here as in Zwick v. Freeman, 373 F.2d at 115, "it is inconceivable that petitioners were unaware of their financial condition and unaware that every additional transaction they entered into was likely to result in another violation of the Commodities Act."

### III.

Section 8(b) of PACA, 7 U.S.C. § 499h(b), is constitutional. The restriction upon employment of any person who is or has been reasonably connected with a licensee who has been found to have committed any flagrant or repeated violations of the Act has been held by this court neither to violate the due process clause of the fifth amendment nor to constitute a bill of attainder. We have nothing to add to what has already been said in Zwick v. Freeman, 373 F.2d at 118–120. *See also* Birkenfield v. United States, 369 F.2d 491 (3d Cir. 1966).

### IV.

Petitioner seeks a remand on the question of willfulness, arguing that had it known that willfulness was in issue it never would have stipulated to the violations of the Act; the claim is that it has never had an opportunity to present evidence on the question of willfulness. As previously stated, however, willfulness is irrelevant since § 9(b) of the Administrative Procedure Act is not applicable to the case for the reasons stated in part II above. But in any case, the judicial officer gave petitioner an opportunity to make an offer of proof relative to willfulness and about the best that the petitioner could do was to indicate that in connection with a few transactions close to bankruptcy, the petitioner was having some collection problems of its own. But with so many violations charged, the number of its own non-payments that could be explained in this way was very small indeed. Two hundred fifty-three of the violations occurred before the involuntary petition was filed on November 19, 1968. More than 30 of these were proved by witnesses at the hearing prior to the stipulation of violations. There is, in short, nothing new that petitioner could offer which would go to eliminate the consequences of the Act as applicable to Paul Steinberg. We point out, however, that after one year the Secretary may approve his employment by a licensee if a

satisfactory bond is given and after two years he may approve such employment without bond. Note 1, *supra*.

We deny review of the order of the Secretary of Agriculture.