801 F.2d 1410
 255 U.S.App.D.C. 371
 Nuncio J. MARTINO, Petitioner,
v.
UNITED STATES DEPARTMENT OF AGRICULTURE and United States of
America, Respondents.
Hilmer J. SCHMIDT, Petitioner,
v.
UNITED STATES DEPARTMENT OF AGRICULTURE and United States of
America, Respondents.
 Nos. 84-1427, 84-1476.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued March 21, 1986.
Decided Sept. 30, 1986.
 
 Edward M. Ruckert, with whom Robert H. Myers, Jr., and Carole Stern were on brief, for petitioners.
 Aaron B. Kahn, Dept. of Agriculture, with whom James Michael Kelly, Associate Gen. Counsel, and Raymond W. Fullerton, Asst. Gen. Counsel, Dept. of Agriculture, were on brief, for respondents.
 Thomas D. Edmondson, Atty. Dept. of Agriculture, also entered an appearance for respondents.
 Before ROBINSON and BORK, Circuit Judges, and WRIGHT, Senior Circuit Judge.
 Opinion for the Court filed by Circuit Judge ROBINSON.
 Spottswood W. ROBINSON, III, Circuit Judge:
 
 
 1
 Petitioners attack orders of the Administrator of the Agricultural Marketing Service of the Department of Agriculture[1] temporarily debarring them from employment by any licensee under the Perishable Agricultural Commodities Act.[2] The orders rest on findings by a presiding hearing officer that Tomatoes, Inc., a licensee, had flagrantly and repeatedly violated the Act, and that petitioners had been "responsibly connected" because each owned more than ten percent of the licensee's stock.[3] Our review discloses that the administrative record amply supports these determinations, and accordingly we affirm.
 
 I. THE REGULATORY BAN
 
 2
 The Perishable Agriculture Commodities Act, which has undergone multiple amendments since its original passage in 1930,[4] is crafted meticulously to suppress unfair practices in the industry.[5] The section applicable here enables the Secretary of Agriculture to bar from employment therein, for varying periods of time, not only those who are direct violators of the Act but also those who are or have been "responsibly connected with" such violators.[6]
 
 
 3
 The Act defines "responsibly connected" as "affiliated or connected with a commission merchant, dealer, or broker as (A) partner in a partnership, or (B) officer, director, or a holder of more than 10 per centum of the outstanding stock of a corporation or association."[7] As this court has noted, " '[t]he Perishable Agricultural Commodities Act is admittedly and intentionally a "tough" law.' "[8] By the terms of the Act, once a person is found to be a bona fide partner, officer, director, or ten-percent or larger shareholder of a sanctioned company, he is completely foreclosed from employment in the industry for at least one year,[9] whether or not he participated personally in the violation.[10]
 
 II. THE FACTUAL BACKGROUND
 
 4
 Petitioner Martino is vice-president and general manager of Northside Banana, a licensee operating a wholesale fresh fruit and vegetable business, where he has worked for 22 years.[11] Petitioner Schmidt owns 98 per-cent of the stock of Northside Banana.[12] In 1978, petitioners assisted a longtime friend, John D. Madera, in forming a new produce company,[13] Tomatoes, Inc., which was incorporated on September 5 of that year.[14] Martino and Schmidt each owned 2,000, or 22.2 percent, of the 9,000 shares of stock issued by Tomatoes, Inc.[15]
 
 
 5
 Subsequently, between September, 1980, and May, 1981, Tomatoes, Inc. purchased 45 lots of tomatoes from ten sellers, but failed to pay the $372,481.21 owing.[16] Tomatoes, Inc. consented to issuance of an order finding that these violations of the Act were "willful, repeated and flagrant," and revoking its license on November 1, 1982.[17]
 
 
 6
 In the meantime, the Chief of the Regulatory Branch of the Agricultural Marketing Service's Fruit and Vegetable Division notified petitioners that departmental records showed that they were responsibly connected with Tomatoes Inc.[18] Pursuant to Department of Agriculture regulations,[19] each petitioner requested and was afforded a hearing before a designated presiding officer on the question whether he was in fact so connected.[20] The presiding officer found against both petitioners,[21] and on their appeals the Administrator of the Agricultural Marketing Service summarily affirmed without opinion.[22] These petitions for review ensued.
 
 III. PROCEDURAL CHALLENGES
 
 7
 Petitioners have three procedural quibbles with the administrative decisionmaking process leading to their debarment. These may be disposed of in short order.
 
 
 8
 First, petitioners quarrel with the Administrator's summary affirmances of the decisions of the presiding officer.[23] Where, as here, a hearing officer has clearly stated the basis for error-free conclusions, the agency is at liberty to adopt his report as its own.[24]
 
 
 9
 Second, petitioners make the argument that the Administrator's failure to recite that he reviewed the entire record renders the debarment orders void.[25] Even leaving aside the question whether the formal adjudication procedures of the Administrative Procedures Act[26] apply to proceedings under the Perishable Agricultural Commodities Act--which does not expressly require an on-the-record hearing, or indeed any hearing, on the question of responsible connection[27]--we must accord the Administrator a presumption of administrative regularity.[28] And any lack of a formal motion defining the record was harmless error.[29]
 
 
 10
 Finally, petitioners claim that the presiding officer was under the control of the chief of the Regulatory Branch of the Fruit and Vegetable Division.[30] This charge is denied by the agency,[31] and is devoid of any record support whatsoever. We deem it utterly lacking in merit.
 
 IV. RESPONSIBLE CONNECTION
 
 11
 Petitioners would extract from our earlier decisions a right to challenge broadly the statutory conclusion that a ten-percent or larger stockholder is "responsibly connected." Our holdings, on the contrary, offer only a narrow opportunity, which petitioners have already been afforded, to contest the operation of the statute in this respect.
 
 
 12
 The standard applicable was enunciated a decade ago in our decision in Quinn v. Butz.[32] Quinn was an employee of Devita Fruit Company for eight years of its existence as a sole proprietorship, and at his employer's request upon eventual incorporation of the company became its vice-president nominally in order that it might meet a requirement of state law.[33] Later, the company was found to have repeatedly and flagrantly violated the Act. The Secretary, denying Quinn a hearing and refusing to consider his proffer of evidence that the company was a corporation only fictionally and that he was vice-president only nominally, found him to be responsibly connected.[34] We held that the Act's provisions on responsible connection established, not an incontrovertible rule, but rather a rebuttable presumption subject to override by evidence.[35] We accordingly remanded the case to the Secretary with instructions to afford Quinn the opportunity to show that Devita Fruit Company was not a corporation within the meaning of the Act and that he was not an officer in any real sense of the word.[36] We expressly acknowledged, however, that had Quinn been a genuine rather than purely nominal officer of a true rather than a fictional corporation, he would have been responsibly connected.[37]
 
 
 13
 Similarly, Minotto v. Department of Agriculture[38] concerned a clerical employee who, like Quinn, was made a nominal director at her corporate employer's request and for its convenience.[39] While Minotto had been afforded the hearing denied in Quinn, we rejected an administrative holding that she was responsibly connected, noting that "[t]he finding that an individual was 'responsibly connected' must be based upon evidence of an actual, significant nexus with the violating company."[40] Like Quinn, Minotto emphasized that its conclusion depended upon the determination that Minotto's status as a director was only nominal.[41]
 
 
 14
 We face a vastly different situation here. Unlike Quinn and Minotto, both petitioners clearly have "an actual, significant nexus with the violating company,"[42] and thus fall within one of the statutory categories of responsibly connected persons. Both hold 22.2 percent of the stock of Tomatoes, Inc.; unlike Quinn and Minotto, neither was enticed or coerced by an employer into the position that renders him "responsibly connected."[43] Absent inveiglement of that sort,
 
 
 15
 [s]urely[ ] the relationships of director, officer or substantial shareholder form a sufficient nexus for the arbitrary conclusion of responsible connection. Moreover, the formation of such relationships with the sanctioned company is a voluntary act. The fact that an individual has not exercised "real" authority in the sanctioned company is not controlling: certainly the individual could have resigned as an officer and director and disposed of his stock. It was his free choice not to do so. Having made that choice, the appellant[s] assumed the burdens imposed by the Act.[44]
 
 
 16
 And each petitioner has had the opportunity--denied in Quinn --to demonstrate that somehow he does not belong in any of the statutory categories of responsible connection,[45] and neither has done so. Since petitioners have properly been found to be bona fide holders of more than ten percent of the stock of Tomatoes, Inc., the conclusion that they were reasonably connected with that corporation must stand.[46]
 
 
 17
 The orders finding petitioners to be "responsibly connected" with Tomatoes, Inc., and therefore subject to the sanctions of the Act, are accordingly
 
 
 18
 Affirmed.
 
 
 
 [1]
 Nuncio J. Martino, PACA-RC-82-1006 (June 19, 1984) (final order), reproduced in Petitioners' Appendix (P.App.) F; Hilmer C. Schmidt, PACA-RC-82-1035 (July 23, 1984) (final order), reproduced in P.App.G
 
 
 [2]
 Ch. 436, Sec. 1, 46 Stat. 531 (1930) (codified as amended at 7 U.S.C. Sec. 499a et seq. (1982)) [hereinafter cited as codified]
 
 
 [3]
 Tomatoes, Inc., PACA Dkt. No. 2-5921 (Nov. 1, 1982) (decision and order) at 2, reproduced in Respondent's Appendix (R.App.) 19-A; Nuncio J. Martino, PACA-RC-82-1006 (Jan. 13, 1984) (decision) at 2-4, 11, reproduced in P.App.D [hereinafter cited as Martino Decision ]; Hilmer C. Schmidt, PACA-RC-82-1035 (Apr. 27, 1984) (decision) at 2-4, 15, reproduced in P.App.E [hereinafter cited as Schmidt Decision ]. Allegedly, Martino also served as a director of the company, see Brief for Respondent at 3 n. 6; Martino Decision, supra, at 11, but we need consider only his role as stockholder
 
 
 [4]
 See Act of Apr. 13, 1934, ch. 120, 48 Stat. 584; Act of Aug. 30, 1937, ch. 719, 50 Stat. 725; Act of June 29, 1940, ch. 456, 54 Stat. 696; Pub.L. No. 87-725, 76 Stat. 673 (1962); Pub.L. No. 91-107, 83 Stat. 182 (1969); Pub.L. No. 95-562, 92 Stat. 2381 (1978)
 
 
 [5]
 Since the history of the Act is canvassed in Quinn v. Butz, 166 U.S.App.D.C. 363, 365-366, 373-375, 510 F.2d 743, 745-746, 753-755 (1975), it is not repeated here. See also Birkenfield v. United States, 369 F.2d 491, 494 (3d Cir.1966); Pupillo v. United States, 755 F.2d 638, 643-644 (8th Cir.1985)
 
 
 [6]
 7 U.S.C. Sec. 499h(b) (1982), providing in relevant part:
 Except with the approval of the Secretary, no licensee shall employ any person, or any person who is or has been responsibly connected with any person--
 (1) whose license has been revoked or is currently suspended by order of the Secretary;
 (2) who has been found after notice and opportunity for hearing to have committed any flagrant or repeated violation of section 499b of this title ...; or
 (3) against whom there is an unpaid reparation award issued within two years....
 7 U.S.C. Sec. 499a(9) (1982).
 
 
 [8]
 Finer Foods Sales Co. v. Block, 228 U.S.App.D.C. 205, 212, 708 F.2d 774, 781 (1983) (quoting S.Rep. No. 2507, 84th Cong., 2d Sess. (1956)), reprinted in 1956 U.S.Code Cong. & Ad.News 3699, 3701
 
 
 [9]
 The Secretary may approve employment after one year upon the posting of a bond, or after two years without bond. 7 U.S.C. Sec. 499h(b) (1982)
 
 
 [10]
 S.Rep. No. 750, 87th Cong., 1st Sess. 4-5 (1961); H.R.Rep. No. 1546, 87th Cong., 2d Sess. 6 (1962), reprinted in 1962 U.S.Code Cong. & Ad.News 2749, 2753. See Quinn v. Butz, supra note 5, 166 U.S.App.D.C. at 376 n. 84, 510 F.2d at 756 n. 84; George Steinberg & Son, Inc. v. Butz, 491 F.2d 988, 994, (2d Cir.), cert. denied, 419 U.S. 830, 95 S.Ct. 53, 42 L.Ed.2d 55 (1974); Zwick v. Freeman, 373 F.2d 110, 118 (2d Cir.), cert. denied, 389 U.S. 835, 88 S.Ct. 43, 19 L.Ed.2d 96 (1967); Birkenfield v. United States, supra note 5, 369 F.2d at 493; Pupillo v. United States, supra note 5, 755 F.2d at 643-644
 
 
 [11]
 Transcript of hearing (Tr.), Nuncio J. Martino, PACA-RC-82-1006 (June 15, 1983) 82-83 [hereinafter cited as Martino Hearing]
 
 
 [12]
 Transcript of hearing (Tr.), Hilmer C. Schmidt, PACA-RC-82-1035 (June 15, 1983) 82-85 [hereinafter cited as Schmidt Hearing]
 
 
 [13]
 Martino Hearing, supra note 11, Tr. 7-9, 32, 35-36, 61, 84, 101-103, 111-112; Schmidt Hearing, supra note 12, Tr. 85-87, 91-93, 101-103. This help included aid in finding an attorney, obtaining financing, and preparing paperwork. Id
 
 
 [14]
 R.App. 1A; Martino Hearing, supra note 11, Tr. 9-10
 
 
 [15]
 Martino Decision, supra note 3, at 2-4, 11; Schmidt Decision, supra note 3, at 2-4, 15. The finding on stock ownership was firmly supported by the evidence, see Minotto v. Department of Agriculture, 229 U.S.App.D.C. 128, 129 n. 3, 711 F.2d 406, 407 n. 3 (1983); Pupillo v. United States, supra note 5, 755 F.2d at 643, and was conceded by petitioners at oral argument
 
 
 [16]
 Complaint, Tomatoes, Inc., PACA Dkt. No. 2-5921 (filed Jan. 20, 1982) at 2-4, R.App. 11A-13A
 
 
 [17]
 Tomatoes, Inc., supra note 3, (decision and order) at 2, R.App. 19A
 
 
 [18]
 Letter from J.J. Gardner to Nuncio J. Martino (Jan. 22, 1982), R.App. 8A; Letter from J.J. Gardner to Hilmer C. Schmidt (Sept. 27, 1982), R.App. 27A
 
 
 [19]
 7 C.F.R. Secs. 47.47-47.68 (1986)
 
 
 [20]
 See Martino Hearing, supra note 11; Schmidt Hearing, supra note 12
 
 
 [21]
 Martino Decision, supra note 3, at 12; Schmidt Decision, supra note 3, at 16
 
 
 [22]
 Nuncio J. Martino, supra note 1; Hilmer C. Schmidt, supra note 1
 
 
 [23]
 Brief for Petitioners at 30-31. See note 1 supra and accompanying text
 
 
 [24]
 Illinois v. ICC, 698 F.2d 868, 872 (7th Cir.1983); Trailways v. United States, 235 F.Supp. 509, 512 (D.D.C.1964) (three-judge court)
 
 
 [25]
 Brief for Petitioners at 32-33. See text supra at note 22
 
 
 [26]
 5 U.S.C. Secs. 554, 556 (1982)
 
 
 [27]
 Minotto v. Department of Agriculture, supra note 15, 229 U.S.App.D.C. at 129 n. 3, 711 F.2d at 407 n. 3. See Izaak Walton League v. Marsh, 210 U.S.App.D.C. 233, 248-249 n. 37, 655 F.2d 346, 361-362 n. 37, cert. denied, 454 U.S. 1092, 102 S.Ct. 657, 70 L.Ed.2d 630 (1981); Association of Nat'l Advertisers v. FTC, 201 U.S.App.D.C. 165, 174-175 & n. 17, 627 F.2d 1151, 1160-1161 & n. 17 (1979), cert. denied, 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1113 (1980)
 
 
 [28]
 E.g., FTC v. Owens-Corning Fiberglas Corp., 200 U.S.App.D.C. 102, 111, 626 F.2d 966, 975 (1980)
 
 
 [29]
 Pupillo v. United States, supra note 10, 755 F.2d at 645
 
 
 [30]
 Brief for Petitioners at 33-35
 
 
 [31]
 Brief for Respondents at 23 n. 11
 
 
 [32]
 Supra note 5
 
 
 [33]
 166 U.S.App.D.C. at 367, 510 F.2d at 747
 
 
 [34]
 Id. at 369-370, 510 F.2d at 749-750
 
 
 [35]
 Id. at 371-376, 510 F.2d at 751-756
 
 
 [36]
 Id. at 366, 370, 510 F.2d at 756, 760
 
 
 [37]
 Id. at 366 n. 84, 510 F.2d at 756 n. 84
 
 
 [38]
 Supra note 15
 
 
 [39]
 229 U.S.App.D.C. at 130, 711 F.2d at 408
 
 
 [40]
 Id. at 130-131, 711 F.2d at 408-409
 
 
 [41]
 Id. at 131, 711 F.2d at 409. We note that the Eighth Circuit in Pupillo, like petitioners, misread this aspect of Minotto. See Pupillo v. United States, supra note 5, 755 F.2d at 643-644
 
 
 [42]
 Minotto v. Department of Agriculture, supra note 15, 229 U.S.App.D.C. at 131, 711 F.2d at 409
 
 
 [43]
 Compare Minotto v. Department of Agriculture, supra note 15, 229 U.S.App.D.C. at 131, 711 F.2d at 409; Quinn v. Butz, supra note 5, 166 U.S.App.D.C. at 367, 510 F.2d at 747
 
 
 [44]
 Birkenfield v. United States, supra note 5, 369 F.2d at 494-495. See also Pupillo v. United States, supra note 5, 755 F.2d at 644
 
 
 [45]
 Martino Hearing, supra note 11; Schmidt Hearing, supra note 12; see 7 C.F.R. Secs. 47.47-47.68 (1986)
 
 
 [46]
 Petitioners argue that the presiding officer was bound to consider separately whether Tomatoes, Inc. was a bona fide corporation. Brief for Petitioners at 11-15, 21-22. Not only was its corporate status explicit in the presiding officer's description of Tomatoes, Inc. as "a Texas corporation," Martino Decision, supra note 3, at 2; Schmidt Decision, supra note 3, at 2, and implicit in his finding that both Martino and Schmidt were corporate stockholders, Martino Decision, supra note 3, at 2-4, 11; Schmidt Decision, supra note 3, at 2-4, 15, but independently it is clearly supported by the record, see, e.g., Articles of Incorporation of Tomatoes, Inc. (filed Sept. 5, 1978), R.App. 1A; Martino Hearing, supra note 11, Tr. 7-10. Moreover, petitioners had the opportunity to unmask Tomatoes, Inc. and reveal its true character as something other than a genuine corporation, compare Quinn v. Butz, supra note 5, 166 U.S.App.D.C. at 376-380, 510 F.2d at 766-770, but failed to do so. Quinn required no more than that petitioners receive "an opportunity to show that the company was not in truth a corporation within the objective that Congress contemplated," 166 U.S.App.D.C. at 380, 510 F.2d at 770 (footnote omitted), and that standard was plainly met here