United States Court of Appeals,

Eleventh Circuit

No. 95-6778.

BAMA TOMATO COMPANY, Petitioner,

v.

UNITED STATES DEPARTMENT OF AGRICULTURE, Respondent.

May 29, 1997.

Petition for Review of a Decision and Order of the Secretary of Agriculture.

Before BIRCH, BLACK and CARNES, Circuit Judges.

BIRCH, Circuit Judge:

In this appeal from a decision and order of the Secretary of Agriculture, we decide three issues related to the employment bar provision of the Perishable Agricultural Commodities Act, 1930, 7 U.S.C. § 499h(b): (1) whether the employment bar provision is unconstitutionally vague and overbroad; (2) whether a licensed employer can challenge a previous determination that an employee is barred from employment by a licensee; and (3) whether a thirty-day suspension of the employer's license was legally warranted and factually justified. The Secretary, through a judicial officer, approved the administrative law judge's conclusion that Bama Tomato Company had violated the employment bar provision but increased the fourteen-day suspension imposed by the administrative law judge to a thirty-day suspension. We AFFIRM.

## I. BACKGROUND

The Secretary of Agriculture ("Secretary"), through a judicial officer, issued a decision and order in October 1992 in which he determined that Mims Produce, Inc. had failed to make full payment promptly to sellers and brokers as required by the Perishable Agricultural Commodities Act, 1930 ("PACA"), 7 U.S.C. §§ 499a-499s. The judicial officer found repeated and flagrant violations of 7 U.S.C. § 499b and revoked the license of Mims Produce. Jimmy Mims ("Mims")

subsequently was notified that the Secretary had determined him to be "responsibly connected"[1] with Mims Produce during the relevant violations. The United States Department of Agriculture ("USDA") further informed Mims that he was barred from employment in any capacity by another licensee until November 1993 and thereafter only with prior approval of the Secretary and the posting of a satisfactory bond.[2] Neither Jimmy Mims nor Mims Produce challenged these employment restrictions.[3]

In 1992, Mims began working for Bama Tomato Company ("Bama"), an Alabama produce dealer and a PACA licensee,[4] as the supervisor of its repacking crew. In January 1993, the USDA first notified Bama that Mims could not continue to be employed by Bama after February 1993.[5] The parties stipulated that Bama removed Mims from the payroll but that, during the period from February 1993 until March 1994, he continued to work, at least sporadically, with Bama's repacking and shipping operations.[6] Also during that period, Mims signed, in the absence of Bama's president,

---

[1] "Responsibly connected" is defined by statute as "affiliated or connected with a commission merchant, dealer, or broker as (A) partner in a partnership, or (B) officer, director, or holder of more than 10 per centum of the outstanding stock of a corporation or association." 7 U.S.C. 499a(b)(9).

[2] The parties agree that Mims was notified of his employment restrictions. The parties disagree, however, as to Mims' status as "responsibly connected." *See* 7 U.S.C. 499a(b)(9). Although Mims was listed as a vice president and director of Mims Produce on license renewal applications, Mims contends that he was not responsibly connected with Mims Produce because it was run as a sole proprietorship by his father.

[3] In a notification letter dated May 1991, the USDA informed Mims that he was deemed to be a vice president and director of Mims Produce and that a disciplinary complaint was filed against the company. The letter further explained that he could be subject to employment restrictions because he was responsibly connected with the company but that he could challenge the determination within 30 days of receipt of the letter.

[4] Randy Griffin, the president of Bama, is Mims' cousin.

[5] In the letter of notification, the USDA provided a 30-day grace period for the last day that Jimmy Mims could be employed by Bama. The notification also addressed the status of Mims' brother, Michael Mims, as an officer, director, and 50-percent shareholder of Bama. Michael Mims subsequently sold his stock in Bama to Rebecca Mims, Jimmy Mims' wife. Since the Secretary does not argue that the stock transaction was inappropriate in view of Jimmy Mims' employment restriction, we do not address the issue here.

[6] Bama made unsuccessful efforts during that time to secure a bond that would allow Mims to work for the company after November 1993. Bama also claims that Randy Griffin repeatedly told Mims to leave the premises until his period of ineligibility was over.

at least twenty-two checks for Bama and executed a lease renewal for Bama's business premises. In July 1994, the USDA filed a complaint against Bama, which alleged that Bama was violating section 499h(b) by continuing to employ Jimmy Mims from February 1993 to March 1994.[7]

An administrative law judge ("ALJ") concluded that Bama had violated the employment bar provisions and assessed a fourteen-day suspension of Bama's license as a sanction for the violation. Although the ALJ noted that a thirty-day suspension would be appropriate, he considered several mitigating factors, including Bama's record as a financially responsible company and the effect of a suspension on Bama's employees, and reduced the suspension to fourteen days. The USDA appealed the ALJ's ruling to the Secretary and Bama cross-appealed. The Secretary, through a judicial officer, affirmed the ALJ's determination that Bama had violated section 499h(b) by continuing to employ Mims after notification that his employment was illegal.[8] The judicial officer, however, rejected the ALJ's consideration of mitigating factors and increased Bama's suspension to thirty days.[9] Bama appeals the decision and order of the judicial officer.

## II. DISCUSSION

Congress enacted the PACA in 1930 to prevent unfair business practices and promote financial responsibility in the interstate commerce of shipping and handling of perishable agricultural commodities, like fresh fruits and vegetables. *George Steinberg and Son, Inc. v. Butz,* 491 F.2d 988, 990 (2d Cir.1974). The statute requires that brokers and dealers be licensed by the Secretary, 7 U.S.C. §§ 499c-499d, and that licensees refrain from unfair business conduct, 7 U.S.C.

Before filing the complaint, the USDA sent a total of four notification letters to Bama informing Bama of the possibility that continuing to employ Mims could result in suspension or revocation of its license.

The judicial officer noted that the ALJ incorrectly determined that the violation ended on November 8, 1993. Although Mims was eligible for employment by a licensee on November 8, 1993 with approval and a bond, Bama continued to employ Mims without approval or bond until March 4, 1994. Thus, the judicial officer determined the period of violation to be from February 1993 until March 1994.

The judicial officer based his decision to suspend Bama's license for 30 days on the numerous warnings that Bama received from the USDA, the duration of Bama's violative conduct, and the fact that Mims was employed by Bama during the period he was ineligible to work even with a bond. He further reasoned that considering hardship to the employees was inappropriate in view of the broader public interest in deterring future violations.

§ 499b(4). The PACA also provides a system of penalties for these violations. The Secretary may revoke or suspend the license of a licensee who fails to "make full payment promptly" for perishable shipments. 7 U.S.C. § 499b(4); *see* 7 U.S.C. § 499h(a). Furthermore, section 499h(b) empowers the Secretary to restrict employment within the industry of "any person who is or has been responsibly connected with" such a violator. "Employment" is defined broadly as "any affiliation of any person with the business operations of a licensee, with or without compensation, including ownership or self-employment." 7 U.S.C. § 499a(b)(10).

We uphold a USDA decision under the PACA unless we find the decision to be unconstitutional, arbitrary, capricious, an abuse of discretion, or in excess of statutory authority. 5 U.S.C. § 706(2). We uphold the USDA's factual findings if they are supported by substantial evidence. *See Federal Trade Comm'n v. Indiana Fed'n of Dentists,* 476 U.S. 447, 454, 106 S.Ct. 2009, 2015-16, 90 L.Ed.2d 445 (1986). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938). We review legal issues *de novo* but "even in considering such issues [we] give some deference to the [agency's] informed judgment." *Indiana Fed'n of Dentists,* 476 U.S. at 454, 106 S.Ct. at 2015.

Bama voices three challenges to the Secretary's decision. First, Bama contends that section 499h(b) is unconstitutional on its face. Second, Bama argues that Mims was not responsibly connected with Mims Produce and, therefore, should not be subject to employment restrictions. Third, Bama argues that the Secretary erred in ignoring mitigating factors and imposing a disproportionately harsh sanction.

A. Constitutionality of the Employment Bar Provision

The employment bar provision of the PACA has survived numerous constitutional challenges. *See, e.g., Siegel v. Lyng,* 851 F.2d 412, 416-418 & n. 12 (D.C.Cir.1988) (rejecting claims that the employment bar provision violates the Due Process Clause or the prohibition of bills of attainder); *Zwick v. Freeman,* 373 F.2d 110, 117-120 (2d Cir.1967) (finding no violation of the Fifth Amendment right to earn a livelihood or the Eighth Amendment right to be free from cruel and

unusual punishment and rejecting the claim that the employment bar is a bill of attainder); *Birkenfield v. United States,* 369 F.2d 491, 494 (3d Cir.1966) (finding no violation of the Due Process Clause when a person, falling within the statutory definition of "responsibly connected," is barred from employment without a hearing). Bama, however, raises an issue of first impression by alleging that the provision is unconstitutionally vague and overbroad on its face. Specifically, Bama contends that the statutory definition of "employment" as "any affiliation" implicates First Amendment rights of free speech and association and should be found unconstitutional.

The Supreme Court set forth the proper analysis for such a facial challenge in *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982):

> In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications.

*Id.* at 494-495, 102 S.Ct. at 1191 (footnotes omitted). Thus, we first determine whether the employment bar provision reaches First Amendment rights.

To determine whether the provision reaches "a substantial amount of constitutionally protected activity," we consider both the ambiguous and unambiguous scope of the provision. *Id.* at 494 n. 6, 102 S.Ct. at 1191 n. 6. The Secretary argues that the provision does not implicate the First Amendment at all and instead regulates employment practices that are outside the reach of the First Amendment. The challenged provision defines "employment" as "any affiliation ... *with the business operations* of a licensee, with or without compensation, including ownership or self employment." 7 U.S.C. § 499a(b)(10) (emphasis added). Thus, employment and employment-like activity are unambiguously prohibited because they involve affiliation with "business operations." We find this unambiguous restriction to be constitutional. *See Nebbia v. New York,* 291 U.S. 502, 527-528, 54 S.Ct. 505, 512, 78 L.Ed. 940 (1934) ("The Constitution does not guarantee the unrestricted privilege to engage in a business or to conduct it as one pleases.").

Bama argues that the employment bar provision, because of its ambiguity, chills free speech

and association because a licensee and a person who is barred from employment could be found to violate the provision by simply "affiliating"[10] with each other.[11] In making this argument, Bama overlooks the language in the statute that restricts the definition of "employment" to "any affiliation ... *with the business operations* of a licensee." 7 U.S.C. § 499a(b)(10) (emphasis added). "Any affiliation ... with the business operations of a licensee" is less ambiguous than "any affiliation ... with ... a licensee," the language upon which Bama seems to base its argument. A person barred from employment could still affiliate with Bama and Bama employees so long as he did not affiliate himself with Bama's "business operations." The term "business operations," in layman's terms, means the day-to-day activities of a business. "Any affiliation ... with the business operations of a licensee" could include owning the business, working for the business, managing the business, selling to the business, buying from the business, negotiating for the business, or consulting with the business—with or without compensation. Thus, based on the restrictive language of the provision, the definition of "employment" arguably extends as far as to cover the relationship between a customer and a licensee. Restricting affiliation with the business operations, even if such restriction includes customers of a business, does not implicate substantial First Amendment rights. Thus, we find that any infringement of First Amendment rights is minimal and that the employment bar provision fails to implicate "a substantial amount of constitutionally protected conduct" under the First Amendment. *See Village of Hoffman Estates,* 455 U.S. at 494, 102 S.Ct. at 1191.

Because we find that the employment bar provision fails to "reach[ ] a substantial amount of constitutionally protected conduct," *id.,* we summarily reject the overbreadth challenge and examine only Bama's vagueness challenge. Bama argues that the broad definition of employment as "any affiliation" is vague because it is unclear what types of activities are prohibited. A statute is vague if it fails to afford a "person of ordinary intelligence a reasonable opportunity to know what

---

A broad definition of "affiliate" is "to associate oneself." Random House Dictionary of the English Language 33 (2d ed. unabridged 1983).

Bama suggests that speech and association with family members and friends could be reached. For example, Bama contends that Mims might be found to be "affiliating" with Bama if he asked his cousin, Randy Griffin, at a family gathering, "How is business?" or if he visited Bama's business premises for social reasons.

is prohibited, so that he may act accordingly." *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298-99, 33 L.Ed.2d 222 (1972). Thus, "[v]ague laws are objectionable as transgressions of due process guarantees on two grounds: (1) they fail to provide fair warning to citizens charged with their observance, and (2) by failing to provide clear guidelines, they lend themselves to arbitrary applications by those charged with their enforcement." *Familias Unidas v. Briscoe,* 619 F.2d 391, 399 n. 8 (5th Cir.1980) (citing *Grayned,* 408 U.S. at 108-09, 92 S.Ct. at 2298-99). Were "employment" defined as merely "any affiliation with a licensee," it indeed might have been too vague to put licensees on notice as to prohibited conduct or to provide sufficient direction to the USDA; however, the statutory definition, "any affiliation ... with the business operations of a licensee," refers to an actual involvement with those operations. Restricting such involvement is a clear application of the statute. Consequently, we cannot say that the employment bar provision "is impermissibly vague in all of its applications," *Village of Hoffman Estates,* 455 U.S. at 495, 102 S.Ct. at 1191.

We further note that, in the absence of the implication of constitutionally protected conduct, "[o]ne to whose conduct a statute clearly applies may not successfully challenge it [facially] for vagueness." *Parker v. Levy,* 417 U.S. 733, 756, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439 (1974). We find that the definition of "employment" is sufficiently precise to preclude the type of activities that Mims performed at Bama—including working in the repacking operation and signing business checks and leases. Because Mims' activities fall squarely within the conduct precluded by the statute and because the employment bar is not vague in all its applications, we reject Bama's vagueness challenge of the employment bar provision of the PACA.

B. Challenge of Mims' Status as "Responsibly Connected" with Mims Produce

The Secretary had determined previously that Mims Produce violated the PACA and that Mims, as a vice president and director, was "responsibly connected" with the company. "Responsibly connected" is defined as "affiliated or connected with a commission merchant, dealer, or broker as (A) partner in a partnership, or (B) officer, director, or holder of more than 10 per centum of the outstanding stock of a corporation or association." 7 U.S.C. § 499a(b)(9). Bama

contends that Mims should not be barred from its employment because he was not "responsibly connected" with Mims Produce. In support of this conclusion, Bama points to case law from the District of Columbia Circuit which holds that a director's status as "responsibly connected" can be rebutted if he shows that he had only a nominal role in the operations of the business.[12] *See, e.g., Minotto v. United States Dep't of Agric.,* 711 F.2d 406, 408 (D.C.Cir.1983). The circuits have split, however, on whether the statutory definition of "responsibly connected," as it existed prior to the 1996 amendment, was a per se rule or a rebuttable presumption. *Compare, e.g., Veg-Mix, Inc. v. United States Dep't of Agric.,* 832 F.2d 601, 611 (D.C.Cir.1987) (allowing a person to prove that he was not at fault or in control of those at fault to avoid the employment bar provision) *with Pupillo v. United States,* 755 F.2d 638, 643-44 (8th Cir.1985) (holding that the statutory definition of "responsibly connected" provided a per se rule). We need not reach the issue here, however, because neither Mims nor Mims Produce previously challenged the Secretary's conclusion that Mims was "responsibly connected," despite the notification sent by the USDA to Mims which indicated that he could raise such a challenge. Mims, therefore, waived his right to contest the issue of whether he was responsibly connected to Mims Produce by failing to challenge directly the determination. *See Farley and Calfee, Inc. v. United States Dep't of Agric.,* 941 F.2d 964, 969 (9th Cir.1991) (holding that failure to respond to notices from the USDA constitutes a waiver of the right to a hearing to contest the issue of whether a person is responsibly connected with a PACA violator). Thus, Bama cannot step into Mims' shoes and challenge the final determination that Mims is subject to the employment bar provisions of the PACA.

C. Challenge of the Imposed Sanctions

Bama also argues that the Secretary erred in increasing the period of suspension from fourteen days to thirty days. "[W]here Congress has entrusted an administrative agency with the

---

Bama also points to section 499a(b)(9), as amended in 1996, in support of the argument that status as an officer or director does not render an individual per se "responsibly connected." 7 U.S.C.A. § 499a(b)(9) (Supp.1997) (requiring that a "responsibly connected" person have active involvement in the PACA violations and status as more than a nominal officer, director, or shareholder). The definition of "responsibly connected" was amended after the violations of both Mims Produce and Bama and is not controlling in this case.

responsibility of selecting the means of achieving the statutory policy," however, our review is limited. *Butz v. Glover Livestock Comm'n Co.,* 411 U.S. 182, 185, 93 S.Ct. 1455, 1458, 36 L.Ed.2d 142 (1973) (internal quotation marks omitted). "We cannot disturb the action of the Secretary, as accomplished through the judicial officer, so long as the proceedings were properly conducted in accordance with constitutional and statutory standards, unless the judgment is "unwarranted in law or ... without justification in fact.' "[13] *J. Acevedo and Sons v. United States,* 524 F.2d 977, 979 (5th Cir.1975) (quoting *Glover Livestock,* 411 U.S. at 185-186, 93 S.Ct. at 1458).

A thirty-day suspension for violation of the employment bar provision is warranted under section 499h(b) of the PACA.[14] In fact, even revocation of Bama's license would have been warranted in law. *See* 7 U.S.C. § 499h(b) ("The Secretary may, after thirty days' notice and an opportunity for a hearing, suspend or revoke the license of any licensee who, after the date given in such notice, continues to employ any person in violation of this section."). Because we find that the suspension imposed by the Secretary was warranted in law, we turn to whether the facts of this case justified a thirty-day suspension.

The ALJ took into account several mitigating factors when he imposed a reduced suspension of fourteen days. Specifically, the ALJ considered Bama's record as a financially responsible company and the effect of a suspension on Bama's employees. The judicial officer considered the same factors and explicitly rejected them. Instead, the judicial officer considered the duration of the violation,[15] the numerous warnings that Bama received, and the fact that Mims worked for Bama during the period of time when he was ineligible to work, even with approval and a bond. The judicial officer also rejected explicitly Bama's contention that it had made numerous efforts to

---

Since Bama does not challenge the nature of the proceedings, we examine only whether the sanctions were warranted in law or justified in fact.

We dismiss without discussion Bama's contention that the judicial officer erroneously imposed the "strict sanction" policy which had been rejected previously by the agency. The judicial officer sufficiently addressed the sanction policy in his opinion and we defer to his interpretation of agency policy.

The judicial officer determined that the period of violation was four months longer than the ALJ had originally determined it to be.

prevent Mims from continuing to work during the period of violation.

Bama contends that the judicial officer erred in failing to give weight to the mitigating factors considered by the ALJ and in failing to consider other factors, including Bama's efforts to prevent Mims' employment and the sporadic nature of Mims' presence at Bama during the period of alleged violation.[16] We disagree. "Although the Secretary could permissibly have given weight to these factors, we think it clear that their presence cannot preclude a [thirty-]day suspension." *Maine Potato Growers, Inc. v. Butz,* 540 F.2d 518, 524 (1st Cir.1976). Thus, we find that the thirty-day suspension is warranted in law and justified by the facts of the case.

### III. CONCLUSION

In this appeal from a decision and order of the Secretary of Agriculture, Bama challenges the constitutionality of the employment bar provision of the Perishable Agricultural Commodities Act, 7 U.S.C. § 499h(b), and further contends that the Secretary erred in applying the provision to Bama and in suspending Bama for thirty days. We determine that the statutory definition of "employment" does not implicate substantial constitutional rights and is neither vague nor overbroad. We also decide that Bama is barred from challenging the previous determination that Mims was "responsibly connected" with Mims Produce, and, therefore, the Secretary properly applied the employment bar provision to Bama. Furthermore, we find that the thirty-day suspension was warranted in law and justified by the facts of the case. We AFFIRM.

---

Bama also argues that the judicial officer should have taken into consideration that Mims was not "responsibly connected" with Mims Produce. As discussed previously in this opinion, we find that Bama cannot challenge Mims status as "responsibly connected." Thus, we need not address this argument in the context of the appropriateness of the sanction.

In addition, Bama argues that a suspension of Bama is inconsistent with PACA's goal of promoting financial responsibility because the suspension will harm an otherwise financially responsible company. We reject this argument in view of policy concerns that financially responsible companies would be encouraged to ignore the strict employment bar provision of the PACA if they were exempt from suspension.